(March 12, 1918.)

STATE, Respondent, v. EDWARD E. MORTON, Appellant.

[171 Pac. 495.]

INTOXICATING LIQUOR—PROHIBITION DISTRICT.

1. In a county in which the sale of intoxicating liquor has not been prohibited by law, which county contained a municipality in which licenses for the sale of intoxicating liquor had been issued and were in force, neither the portion of the county lying outside of the confines of the municipality, nor any precinct outside of the municipality, constituted a "prohibition district" as defined by 1913 Sess. Laws, c. 27, sec. 7.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Charles P. McCarthy, Judge.

Action for maintaining a common nuisance in a prohibition district. Judgment for plaintiff. *Reversed.*

Wood, Driscoll & Wood, for Appellant.

Ada county having voted to regulate and license the sale of liquor in the county, even counsel for the state does not contend that the *locus* of the acts charged here was "territory in which the sale of intoxicating liquor is prohibited by law" under the first clause of the statute. (*Gerding v.*

*Board of County Commrs.*, 13 Ida. 444–448, 90 Pac. 357; *In re Crane*, 27 Ida. 671–692, 151 Pac. 1006, L. R. A. 1918A, 942.)

J. H. Peterson, Ex-Atty. General, T. A. Walters, Atty. General and J. P. Pope, Assistant, for Respondent, cite no authorities on point decided.

RICE, J.—By the indictment in this case it was charged that the appellant, did, on or about the 7th day of December, 1914, "in a certain brick building located at the south end of Ninth Street, known as Joplin's Corner, said brick building being then and there outside of the city limits of Boise City, a municipal corporation of the state of Idaho, and within a prohibition district, wilfully and unlawfully occupy, maintain, control and keep open a place where intoxicating liquors were sold, delivered, furnished, given away and otherwise disposed of in violation of law."

It is conceded that at the time specified in the indictment the sale of intoxicating liquor in Ada county had not been prohibited by law; that liquor licenses were granted and saloons and other places where intoxicating liquor was sold were maintained within the limits of the municipality of Boise City; that no liquor licenses were granted under which saloons, or other places for the sale of intoxicating liquor, could be maintained in Ada county outside of the corporate limits of Boise City. It is also conceded that the appellant did maintain a place where intoxicating liquor was sold and disposed of at the time and place set forth in the indictment.

The question presented by this appeal is whether the place where appellant conducted his business was in a prohibition district.

In the local option law of 1909, a prohibition district is defined to be "any district or territory in the state of Idaho in which the sale of intoxicating liquor is prohibited by law." This definition was in force and effect in 1911, when the legislature passed the law defining the crime with which appellant is charged as follows:

"All places in a prohibition district of the state of Idaho where intoxicating liquors are sold, furnished, delivered, given away, or otherwise disposed of in violation of law; or where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage; or where intoxicating liquors are kept for sale, delivery or disposition in violation of law, and all intoxicating liquors, vessels, glasses, kegs, pumps, bars and other property kept in and used in maintaining such a place, are hereby declared to be common nuisances, and every person who maintains or assists in maintaining such common nuisance is guilty of a misdemeanor, and, upon conviction thereof, shall be punished by a fine of not less than Twenty-five Dollars, nor more than Five Hundred Dollars, or by imprisonment in the county jail for not less than ten days nor more than six months, or by both such fine and imprisonment for each offense." (1911 Sess. Laws, c. 15, sec. 2, p. 33.)

Thereafter, in 1913, the legislature passed an act further regulating the disposal of alcohol and intoxicating liquors within prohibition districts, and in said act defined a prohibition district as follows:

" 'Prohibition district' within the meaning of this act and all other acts prohibiting the selling of intoxicating liquor in any prohibition district in this state, is territory in which the sale of intoxicating liquor is prohibited by law, or where no liquor license has been issued in accordance with the laws of this state." (1913 Sess. Laws, c. 27, sec. 7, p. 127.)

It will be observed that this section is a single sentence composed of two clauses, by the first of which territory wherein the sale of intoxicating liquor was then, or might thereafter be, prohibited by law was made a prohibition district, and by the second, such a district was created of territory wherein no liquor license was issued. The legislature used the word "territory" in the first clause to mean the state, or a political subdivision of it, wherein the sale of intoxicating liquor might theretofore have been, or might thereafter be, prohibited by law, and since the word was used but

once in the section, it undoubtedly has the same meaning when applied to the second clause.

The natural construction of the language of the last mentioned section would be that by "prohibition district" is meant territory in which the sale of intoxicating liquor is prohibited by law, or territory in which the sale of intoxicating liquor might have been prohibited by law, but where it was not so prohibited, but notwithstanding it was not so prohibited, no liquor licenses had been issued in accordance with the laws of this state. The word "territory," when used in a statute like this, connotes a unit of country with some sort of government peculiar to itself. Bouvier's Law Dictionary defines "territory" as follows: "A part of a country separate from the rest and subject to a particular jurisdiction." One of the definitions given by Webster is "Any area or tract of a state not invested with full rights of sovereignty, but governed or ruled as a dependency or subject area, or having a legal system more or less peculiar to itself." These units, so far as the law in force at the time the offense complained of in the indictment is concerned, were counties and municipalities. Hence a portion of a county could not be a prohibition district. Liquor licenses had been issued in Ada county, a political subdivision of the state, wherein the sale of intoxicating liquor might have been prohibited but was not. Therefore, it was not a prohibition district.

It is claimed, however, that a precinct of the county lying outside of the municipality is such a unit of territory that it may be a prohibition district. But a precinct has no governing body which could either grant or refuse liquor licenses within its limits. The term "prohibition district," when used in defining the offense with which the appellant is charged, must have the same meaning as "prohibition district" as used in the other provisions of the statutes prohibiting and regulating the sale of intoxicating liquor and alcohol.

By the act of 1913 it is made unlawful for any physician to issue a prescription for intoxicating liquor as medicine in prohibition districts, except in case of actual sickness and

after making a thorough examination, and then only by the use of a prescribed form of prescription. By section 2 of the act it is declared to be unlawful to sell or dispose of alcohol in a prohibition district to any person until such person shall subscribe and swear to an affidavit before certain designated officers. By said act it is further provided that no wine shall be sold in any prohibition district within the state, except for sacramental purposes, and it is made unlawful for any person to sell or dispose of any intoxicating liquor of any kind in any prohibition district in the state, except by a regularly licensed pharmacist, and then only upon compliance with the other provisions contained in the act. By the same act it is also made unlawful for any person to bring or deliver into any prohibition district in this state, or to have upon his person, or in his personal baggage, or keep in his residence, if such is not a place of business, for his private use, intoxicating liquors in quantity in excess of one gallon, or one case of beer containing not more than twenty-four quart bottles. This last provision was repealed by 1913 Sess. Laws, c. 99, p. 416, but it may be considered in determining the true definition of ''prohibition district.''

In view of these provisions it is difficult to believe that it was the intention of the legislature that a precinct in which no liquor licenses had been granted should constitute a prohibition district. Doubtless it is true that there were, in many counties of the state which at the time of the enactment of the act were known as wet counties, precincts in which no licenses for the sale of intoxicating liquors had been applied for or granted. It surely was not intended, for instance, that a physician in such a county must change his method of practice when he crossed the precinct line from a precinct in which a saloon was located to one in which no licenses had been granted, in order to avoid rendering himself liable to forfeiture of his license to practice medicine in the state. Similar considerations are applicable to the other provisions of the act referred to above.

In view of these considerations, we are constrained to hold that the place in which it is conceded the appellant conducted

his business was not a prohibition district, and the judgment must be reversed.

Morgan, J., concurs.

BUDGE, C. J., Dissenting.—The first and only important assignment of error involves the construction of sec. 2, chap. 15, Session Laws of 1911, and sec. 7, chap. 27, Session Laws of 1913, set forth in the majority opinion.

It is the contention of the appellant that the county of Ada constituted the unit of measurement for a prohibition district within the meaning of the foregoing statutory provisions, and that, since liquor licenses were issued and in effect in Boise City, he did not maintain a common nuisance. It is insisted by the state that all territory outside of Boise City where no liquor licenses had been issued or were in force was prohibition territory.

The question therefore arises: What is a prohibition district within the meaning of the statutory provision that a " 'prohibition district' . . . . is territory . . . . where no liquor license has been issued in accordance with the laws of this state."

The duty devolving upon this court is to place a reasonable construction upon the provisions of the statutes, to the end that the evident purpose of the acts be attained.

It is the holding of the majority opinion that the county, as contradistinguished from the precinct, is the unit of territory intended by the statute to comprise a prohibition district; but it would be more reasonable to hold that the precinct is the unit rather than the county.

Stress is laid upon the definitions of the word "territory." "Territory" is defined in the majority opinion as "a part of a country separated from the rest and subject to a particular jurisdiction," or "any area or tract of a state not invested with full rights of sovereignty, but governed as a dependency or separate area, or having a legal system more or less peculiar to itself."

If there is anything to be deduced from these definitions, it would be not only against rather than in support of the theory that the county is the unit but in support of the theory that the precinct is the unit, for the following reasons: the precinct was absolutely subject to the "particular jurisdiction" of the board of county commissioners which had the exclusive right to refuse to grant liquor licenses; the precinct was not an "area or tract" invested with full rights of sovereignty; and the precinct had "a legal system more or less peculiar to itself"—these definitions certainly apply as well to a precinct as to a county.

Sections 1507 and 1508, Revised Codes, would seem to strengthen the latter view. Sec. 1507 provided that an application for a liquor license must specify the precinct within which the place of sale was to be located and, when granted, the license was restricted to such precinct; sec. 1508 provided that when such application was made for a liquor license, outside of any incorporated city, it was the duty of the board of county commissioners to determine whether or not the liquor license should be granted, "either upon their own motion or upon objections duly filed upon the part of any citizen or resident of the precinct within which it is intended to carry on such sale"; thus making it clear that the rural precincts were entitled to especial consideration so far as the question of issuing liquor licenses was concerned. In fact, the precinct was the only unit recognized, under the law as it stood prior to the enactment of the local option law, by county and state licenses.

As stated in the majority opinion, the local option law of 1909 defined a prohibition district to be "any district or territory in the state of Idaho in which the sale of intoxicating liquor is prohibited by law," that is, where, by an election held under the local option law, by a majority vote the sale of intoxicating liquor was prohibited, the commissioners had no power to issue liquor licenses.

This was the situation in 1911 when the legislature passed the law defining the crime with which appellant is charged. At that time there were many counties that had not voted to

prohibit the sale of intoxicating liquors, and there were municipalities in those counties which were strongly in favor of the sale of intoxicating liquors within the municipalities, thereby overcoming the vote in the county cast by rural districts.

The 1913 session of the legislature, to further restrict and prohibit the sale of intoxicating liquors and afford additional protection to rural districts, passed an act further regulating the disposal of alcohol and intoxicating liquors, and defined a prohibition district as any "territory in which the sale of intoxicating liquor is prohibited by law, or *where no liquor license has been issued in accordance with the laws of this State.*" (Italics mine.) (1913 Sess. Laws, c. 27, sec. 7, p. 127.)

Prior to the 1913 law the commissioners had the power, under sec. 1508, Revised Codes, to refuse to grant a liquor license in any precinct or unincorporated town or village or in any incorporated village, town or city within the county (*Anderson v. Board of County Commrs.*, 22 Ida. 190, 125 Pac. 188; *Sullivan v. Board*, 22 Ida. 202, 125 Pac. 191); and any such place where no liquor license had been issued would be territory "where no liquor license has been issued in accordance with the laws of this State," and would constitute a prohibition district within the meaning of chap. 27, sec. 7, p. 127, 1913 Sess. Laws.

The very purpose of the latter section was to make all such territory a prohibition district, and to afford the protection of the provisions of the law applicable to prohibition districts to rural sections where no licenses had been issued, and to make it impossible for municipalities, which by reason of a majority vote had made a county "wet," to deprive the rural communities within such county of the protection afforded by the provisions of chap. 15, sec. 2, p. 33, 1911 Sess. Laws. To hold otherwise it would follow that where a county was voted "wet" and liquor licenses were granted within a municipality, the entire county would be "wet" irrespective of the action of the board of commissioners in refusing to grant liquor licenses, and a common nuisance such as maintained

by appellant could not be abated. The abatement of the nuisance was the real object sought to be attained by this legislation. The majority opinion emasculates the amendment and deprives the rural districts of the added protection the amendment was designed to afford.

The majority opinion urges that by the act of 1913 it was made unlawful for a physician to issue a prescription for intoxicating liquor as medicine in a prohibition district except in case of actual sickness and after making a thorough examination and then only by the use of a prescribed form of prescription. Therefore the unit could not consistently be limited to less territory than the county, for the reason that to hold otherwise would work a hardship on the physician by requiring him to change his method of practice when he crossed the precinct line from a precinct in which a saloon was located to one in which no license had been issued and render him liable to forfeiture of his license to practice medicine.

The statute imposed only one burden upon the physician, that in a prohibition district his prescriptions for intoxicating liquors were restricted to ''cases of actual sickness and after making a thorough examination of the patient.'' He need not concern himself with wet or dry territory nor their respective boundaries if he confined his prescriptions of intoxicating liquor to cases of actual sickness, and if he prescribed intoxicating liquor in cases other than actual sickness he fostered the industry the law was designed to curtail. No prescription would be required in wet territory because the patient could get intoxicating liquor there without a prescription.

In my opinion, neither the county unit theory nor the precinct unit theory correctly interprets the sections of 'the statutes involved. Either view unduly limits and restricts the purpose of the acts, the objects sought to be attained by them and the broad language used therein. It is clearly apparent that had it been the intention of the legislature to restrict a prohibition district to the territory comprising a county, precinct or municipality, these limits would have been prescribed

in the act in definite terms; but the act placed no limitations other than "territory in which the sale of intoxicating liquor is prohibited by law or where no liquor license has been issued in accordance with the laws of this state." The pertinent fact is that no liquor licenses had been issued or were in force outside of the boundaries of the municipality nor in any territory in Ada county outside of Boise City. Liquor licenses had only been issued and were in force within Boise City, the territorial limits of which are well defined. Since Boise City is a municipality and a separate entity, the issuance of liquor licenses therein depended upon the joint action of the municipal authorities and the board of county commissioners, while the issuance of such licenses within the county outside of municipalities rested with the board of county commissioners solely. It was within the power of the board to refuse to grant liquor licenses within a precinct or within any given territory in the county and where, as in this case, no liquor licenses had been issued or were in force anywhere in the county outside the boundaries of a municipality, all such territory lying without the boundaries thereof *was territory where no liquor licenses had been issued according to law* and constituted a prohibition district within the meaning of sec. 7, chap. 27, *supra,* and the maintaining of a place therein where liquors were disposed of as shown by the admitted facts constituted it a common nuisance within the meaning of such statutory provisions.

The purpose of the law was to prescribe the means by which a public nuisance might be abated and to give the statute a restricted construction defeats this purpose. The judgment should be affirmed.